**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

ANTHONY DALE GRAHAM
CRYSTAL ROSE GRAHAM

        Debtors

Case No. 09-35347

**MEMORANDUM ON
<u>DEBTORS' MOTION FOR CONTEMPT</u>**

**APPEARANCES:**    CLARK & WASHINGTON, P.C.
    Zachary S. Burroughs, Esq.
    5401 Kingston Pike
    Building No. 3, Suite 610
    Knoxville, Tennessee 37919
    Attorney for Debtors

    HODGES, DOUGHTY & CARSON, PLLC
    Thomas H. Dickenson, Esq.
    Post Office Box 869
    Knoxville, Tennessee 37901
    Attorneys for ORNL Federal Credit Union

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion For Show Cause Hearing As to Why ORNL Federal Credit Union Should Not Be Held in Contempt of Court For Violating 11 U.S.C. § 524 (Motion for Contempt) filed by the Debtors on February 4, 2010. ORNL Federal Credit Union (Credit Union) filed its Response to Debtors' Motion For Show Cause Hearing As to Why ORNL Federal Credit Union Should Not Be Held in Contempt of Court For Violating 11 U.S.C. § 524 (Response) also on February 4, 2010. At the initial hearing on the Motion for Contempt held on February 25, 2010, it was determined the court would resolve the following threshold legal issue, as set forth in the scheduling Order entered on February 25, 2010, that is fundamental to the right of the Debtors to proceed on their claim that the Credit Union has violated the discharge injunction of 11 U.S.C. § 524(a)(2) (2006):

> [W]hether the Chapter 7 Individual Debtor's [sic] Statement of Intention - Amended filed by the Debtors on November 16, 2009, served to rescind the Reaffirmation Agreement filed by the Debtors and ORNL Federal Credit Union on November 18, 2009, whereby the Debtors reaffirmed a $27,230.22 obligation secured by a second mortgage on their house and lot at 252 Queener Lane, Caryville, Tennessee.

The record before the court consists of Joint Stipulations of Undisputed Facts (Joint Stipulations) filed by the parties on March 27, 2010, which includes five exhibits: (A) the Reaffirmation Agreement signed by the Debtors and a representative of the Credit Union; (B) the Chapter 7 Debtor's [sic] Statement of Intention - Amended (Amended Statement of Intention) filed by the Debtors on November 16, 2009; (C) the Discharge of Debtors entered on January 14, 2010; (D) a letter from the Debtors' attorney, Zachary S. Burroughs, to Thomas H. Dickenson, the Credit Union's attorney, dated February 1, 2010; and (E) an email response from Mr. Dickenson dated February 1, 2010, to Mr. Burroughs's February 1, 2010 letter.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(A), (O) (2006).

**I**

The Debtors commenced their bankruptcy case by the filing of a Voluntary Petition under Chapter 7 on September 28, 2009.  Included among the claims listed in their schedules was a debt owed the Credit Union secured by a second mortgage on the Debtors' residence at 252 Queener Lane, Caryville, Tennessee (Queener Lane Property).  JT. STIPS. at ¶¶ 1-2.  On November 3, 2009, the Debtors signed a Reaffirmation Agreement reaffirming the Credit Union's claim in the amount of $27,230.22 secured by the Queener Lane Property.  JT. STIPS. at ¶ 3; STIP. EX. A.  The Reaffirmation Agreement, which was executed and filed in compliance with 11 U.S.C. § 524(c) (2006), contains the following provision:

> YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT
>
> YOU MAY RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT AT ANY TIME BEFORE THE BANKRUPTCY COURT ENTERS A DISCHARGE ORDER, OR BEFORE THE EXPIRATION OF THE 60-DAY PERIOD THAT BEGINS ON THE DATE YOUR REAFFIRMATION AGREEMENT IS FILED WITH THE COURT, WHICHEVER OCCURS LATER. TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT, YOU MUST NOTIFY THE CREDITOR IN WRITING THAT YOUR REAFFIRMATION AGREEMENT IS RESCINDED (OR CANCELED).

STIP. EX. A, at 4.  The Debtors' attorney signed the declaration required by 11 U.S.C. § 524(c)(3) on November 6, 2009, and the Credit Union's representative signed the agreement on November 16, 2009.  STIP. EX. A.  The Reaffirmation Agreement was filed on November 18, 2009.  JT. STIPS. at ¶ 6.  The Debtors at no time forwarded the Credit Union or its attorney a document titled or containing the words "Notice of Recision."  JT. STIPS. at ¶ 12.

3

On November 16, 2009, prior to the filing of the Reaffirmation Agreement, the Debtors filed an Amended Statement of Intention stating, *inter alia*, that the Queener Lane Property would be "Surrendered."[1] JT. STIPS. at ¶ 4; STIP. EX. B. The Amended Statement of Intention was mailed to the Credit Union at its address at 221 South Rutgers Avenue, Oak Ridge, Tennessee 37831, on November 16, 2009. JT. STIPS. at ¶¶ 5. In mid to late January 2010, after the Debtors received their discharge on January 14, 2010, the Credit Union attempted to collect on its second mortgage claim by placing a freeze on the Debtors' checking and savings accounts which contained a total of $1,256.72. JT. STIPS. at ¶¶ 7-9. On February 1, 2010, the Debtors' attorney wrote the Credit Union's attorney, requesting that the efforts to collect on the account cease and that the funds be returned to the Debtors because the Credit Union's claim had been discharged on January 14, 2010.[2] JT. STIPS. at ¶ 10; STIP. EX. D. The Credit Union, disagreeing that its claim has been discharged, refused to return the funds. JT. STIPS. at ¶ 11; STIP. EX. E.

In support of their Motion for Contempt, the Debtors argue that the Amended Statement of Intention adequately notified the Credit Union in writing that they were rescinding the Reaffirmation Agreement. The Debtors additionally argue that they were not required by statute or the

---

[1] For unexplained reasons, the Debtors did not sign the Declaration of Perjury accompanying the Statement of Intention which recites "I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease." Rather, appended to the Statement of Intention is a document signed by the Debtors entitled "Unsworn Declaration Under Penalty of Perjury to Amended Debtor's [sic] Statement of Intention" reciting that "We, Anthony Dale Graham and Crystal Rose Graham, declare under penalty of perjury that we have read the above statement and the matters stated therein are true and correct to the best of our knowledge, information and belief." Additionally, the court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, that the Debtors in the original Chapter 7 Individual Debtor's [sic] Statement of Intention filed with their petition on September 28, 2009, stated that they were retaining the Queener Lane Property and would "Reaffirm the debt."

[2] The court takes judicial notice of the fact that the Debtors' case was a "No Asset" case and that the Chapter 7 Trustee filed the Chapter 7 Trustee's Report of No Distribution on November 4, 2009, wherein she abandoned all property of the estate set forth on Schedules A and B as burdensome or of inconsequential value to the estate.

Reaffirmation Agreement to provide notice of rescission containing any specific language or form and that the Credit Union could have included such terms had it chosen to do so. On the other side, the Credit Union argues that surrender of collateral and reaffirmation are not mutually exclusive and the Debtors' sending the Amended Statement of Intention to the Credit Union did not equate to giving written notice of rescission of the Reaffirmation Agreement.

Simply stated, the question before the court is whether the Amended Statement of Intention mailed to the Credit Union on November 16, 2009, stating that the Queener Lane Property would be "Surrendered," constitutes a written notice of recision under the terms of the Reaffirmation Agreement.

## II

Through discharge, the "honest but unfortunate" debtor obtains relief from his debts, allowing for a "fresh start." *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). Discharged debts are not extinguished; however, post-discharge, a debtor is no longer personally liable for them. *In re Williams*, 291 B.R. 445, 446 (Bankr. E.D. Tenn. 2003) (citing *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir. 1993)). The debtor may nevertheless voluntarily choose to reaffirm any dischargeable debt by executing a reaffirmation agreement with a specific creditor in accordance with the restrictions and requirements of 11 U.S.C. § 524(c). *See In re Cruz*, 254 B.R. 801, 813 (Bankr. S.D.N.Y. 2000) ("The only manner in which a debtor's personal liability on a pre-petition debt can survive a discharge is through an enforceable reaffirmation agreement between the debtor and creditor

pursuant to . . . § 524(c).") (quoting *In re Moore*, 50 B.R. 301, 302 (Bankr. S.D. Ohio 1985)); *In re Strong*, 232 B.R. 921, 923 (Bankr. E.D. Tenn. 1999). "A reaffirmation agreement is a contract that establishes a new repayment obligation, and the law governing such contracts is the 'applicable nonbankruptcy law.'" *In re Ollie*, 207 B.R. 586, 587 (Bankr. W.D. Tenn. 1997); *see also In re Kahn*, 406 B.R. 269, 275 (Bankr. E.D. Pa. 2009) ("[A]n enforceable reaffirmation agreement is a new contract to which conventional contract principles apply, construed in accordance with relevant state law.").

One such restriction is that a reaffirmation agreement is enforceable only if "the debtor has not rescinded such agreement at any time prior to discharge or within 60 days after such agreement is filed with the court, whichever occurs later, by giving notice of recision to the holder of such claim." 11 U.S.C. § 524(c)(4). Although the method for giving notice of rescission under § 524(c)(4) is not statutorily provided or defined, at least two courts have concluded that a reaffirmation agreement may be effectively rescinded by giving oral notice of the recision to the creditor. *See In re Polkus*, 2008 Bankr. LEXIS 3223, at *4, WL 5099967 at *2 (Bankr. D. Ariz. Dec. 3, 2008) (holding that "'notice' can refer to transmitting a fact either orally or in writing"); *Booth v. Nat'l City Bank (In re Booth)*, 242 B.R. 912, 916 (B.A.P. 6th Cir. 2000) ("Certainly 11 U.S.C. § 524(c) does not require that the notice of rescission be in writing; it simply requires 'giving notice of rescission' to the creditor."). Nevertheless, because "no specific methodology is prescribed, . . . a creditor is free to add additional terms. For example, a creditor may require that notice of the rescission be given in writing and that the notice be sent to a specific address." *In re Smyth*, 277 B.R. 353, 356 (Bankr. N.D. Ohio 2001). Likewise, stating that "a creditor can negotiate for any legal terms in a reaffirmation agreement[,]" the Sixth Circuit Bankruptcy Appellate Panel

6

has held that "[a] negotiated provision that the debtor's recision must be tendered in writing is entirely legal because it does not unduly or impermissibly limit or restrict the debtor's statutory right to rescind." *Booth*, 242 B.R. at 916 (citations omitted).

Here, the question of whether the Amended Statement of Intention sufficed as notice that the Reaffirmation Agreement was rescinded is a question of contract interpretation under Tennessee law. "When resolving disputes concerning contract interpretation, [the court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

> The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. In the case of written contracts, these intentions are reflected in the contract itself. Thus, the search for the contracting parties' intent should focus on (1) the four corners of the contract, (2) the circumstances in which the contract was made, and (3) the parties' actions in carrying out the contract.
>
> In the absence of fraud or mistake, courts should construe contracts as written. The courts should accord contractual terms their natural and ordinary meaning, and should construe them in the context of the entire contract. The courts should also avoid strained constructions that create ambiguities where none exist.
>
> The courts may not make a new contract for parties who have spoken for themselves, and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise. Thus, when called upon to interpret a contract, the courts may not favor either party. However, when a contract contains ambiguous provisions, those provisions will be construed against the party responsible for drafting them.

*Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 681-82 (Tenn. Ct. App. 1999) (internal citations omitted).

Under Tennessee law, "[a] rescission involves the avoidance, or setting aside, of a transaction[, amounting] to the unmaking of a contract, or an undoing of it from the beginning, and

7

not merely a termination." *Walsh v. BA, Inc.*, 37 S.W.3d 911, 916 (Tenn. Ct. App. 2000) (quoting *Mills v. Brown*, 568 S.W.2d 100, 102 (Tenn. 1978) and 17B C.J.S. *Contracts* § 422, at 41 (1999) (internal quotations omitted)). Accordingly,

> cancellation, or rescission must be clearly expressed, and acts and conduct of the parties to be sufficient, must be positive, unequivocal, and inconsistent with the existence of the contract. Conduct which is not necessarily inconsistent with continuance of the contract will not be regarded as showing an implied agreement to discharge the contract[.]

*Mid-South Builders, Inc. v. Williams*, 1999 Tenn. App. LEXIS 547, at *10-11, 1999 WL 596375, at *4 (Tenn. Ct. App. Aug. 10, 1999) (quoting *Ark. Dailies, Inc. v. Dan*, 260 S.W.2d 200, 203 (Tenn. Ct. App. 1953)); *see also Russom v. Ins. Co. of N. Am.*, 421 F.2d 985, 992 (6th Cir. 1970) ("Tennessee law . . . requires that the termination of a contract by mutual consent of both parties be positive, clear and unambiguous, conveying an unquestioned purpose to terminate the contract."); *Bagwell v. Susman*, 165 F.2d 412, 415 (6th Cir. 1947) ("A notice of rescission must be clear and unambiguous, conveying an unquestionable purpose to terminate the contract. Where from the conduct of the one having the right to rescind, it is not clear whether he has rescinded the contract or not, he will be deemed not to have done so.") (citation omitted).

By the provision "[t]o rescind (cancel) your reaffirmation agreement, you must notify the creditor in writing that your reaffirmation agreement is rescinded (or canceled)," the Debtors' Reaffirmation Agreement with the Credit Union unambiguously requires recision in writing. STIP. EX. A. Reading this clause in conjunction with Tennessee law requiring clear and unambiguous language conveying the desire to rescind, the court finds that the Debtors were required to notify the Credit Union in writing that they were rescinding or cancelling their Reaffirmation Agreement,

8

using language that unequivocally relayed the rescission or cancellation. It was not sufficient for the Debtors to simply mail a copy of the Amended Statement of Intention to the Credit Union.

Nowhere in the Amended Statement of Intention did the Debtors specifically rescind or cancel the Reaffirmation Agreement, nor is the Reaffirmation Agreement referenced. At most, the Amended Statement of Intention put the Credit Union on notice that the Debtors had decided to surrender the Queener Lane Property. Nevertheless, notice of surrender by the Debtors of their real property in their Chapter 7 case does not equate to a rescission of the Reaffirmation Agreement, which was a new agreement between the Debtors and the Credit Union. The Debtors filed their original Statement of Intention and Amended Statement of Intention pursuant to 11 U.S.C. § 521(a)(2) (2006), which requires Chapter 7 debtors to file, within thirty days of the filing of their bankruptcy case, a statement as to their intentions with respect to the surrender or retention, through redemption or reaffirmation, of property of the estate subject to secured debt. *See also* FED. R. BANKR. P. 1007(b)(2) (requiring service of a statement of intention on the trustee and creditors named within on or before filing); FED. R. BANKR. P. 1009(b) (authorizing amendment of a statement of intention prior to the § 521 deadlines and requiring service of any amendment upon the trustee and affected creditors). "The purpose of requiring a debtor to file a Statement of Intention is to provide a secured creditor of knowledge of the debtor's intentions concerning collateral and to facilitate the speedy resolution of debt compromise and repayment without abrogating the substantive rights of the debtor[, but a] Statement of Intention which indicates a debtor's desire to reaffirm is not the same thing as reaffirming the debt itself pursuant to the stringent provisions of 11 U.S.C. § 524(c)." *In re Stefano*, 134 B.R. 824, 826 (Bankr. W.D. Pa. 1991) (citing *In re Johnson*, 114 B.R. 799 (Bankr. D.D.C. 1990)). The opposite is also true – a statement of intent to surrender

is not the same thing as rescission of a previously executed reaffirmation agreement and the court agrees with the assessment by the Bankruptcy Court for the Northern District of Georgia that

> section 524(c) does not imply, let alone state, that amending a statement of intention would effect a rescission of a reaffirmation agreement or would extend the time within which to rescind.  Instead, that section provides only that a debtor may rescind a reaffirmation agreement "at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later."  Nor does section 521 permit amendment of a statement of intention for the purpose of undoing a reaffirmation of a debt.

*In re Wathey*, 2005 Bankr. LEXIS 599, at \*6 (Bankr. N.D. Ga. Feb. 16, 2005).

The Amended Statement of Intention filed by the Debtors on November 16, 2009, did not constitute "notice of rescission" as required by § 524(c)(4) and did not "notify the creditor in writing that [the] reaffirmation agreement [was] rescinded (or canceled)" as required by the Reaffirmation Agreement.  The court further observes that the Amended Statement of Intention was filed by the Debtors utilizing Official Form 8 prescribed by the Judicial Conference of the United States as required by Rule 9009 of the Federal Rules of Bankruptcy Procedure.  Official Form 8 is designed to conform to 11 U.S.C. § 362(h) (2006) and 11 U.S.C. § 521(a)(2), both of which deal with the filing of the statement of intention by an individual debtor in a Chapter 7 case.  *See* OFF. FORM B8 (CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION) (12/08) (Advisory Committee Notes 2005 and 2008 Amendments).  The Statement of Intention has no relationship to the Reaffirmation Agreements and the efforts of the Debtors' counsel to link it to the Reaffirmation Agreement is troublesome.

In summary, the court finds that the Reaffirmation Agreement was not rescinded, is in full force and effect, and the Debtors are bound by its terms.  The Credit Union was, therefore, within

its rights to enforce the agreement. Its action in placing a freeze on the Debtors' checking and savings accounts was not, therefore, violative of the discharge injunction of 11 U.S.C. § 524(a)(2) (2006).

An order denying the Motion for Contempt will be entered.

FILED:  May 18, 2010

                                      BY THE COURT

                                      */s/  RICHARD STAIR, JR.*

                                      RICHARD STAIR, JR.
                                      UNITED STATES BANKRUPTCY JUDGE